SCOTT WILSON, Attorney General, GEORGE A. WELCH, Relator,

*vs.*

JOHN LACROIX.

SAME, FORTUNAT BELLEAU, Relator, *vs.* STEPHEN J. KELLEY.

SAME, GEORGE B. O'CONNELL, Relator, *vs.* J. J. PELLETIER.

SAME, AIME ASSELIN, Relator, *vs.* JOHN M. KEARNS.

Androscoggin.    Opinion December 18, 1913.

*Appeal.    Jurisdiction.    Petitions.    Quo Warranto.    Revised Statutes, Chapter 6, Sections 70-74.*

Upon petitions for quo warranto brought by the above named petitioners to test the title of the offices of assessor, city solicitor, city physician and city auditor in the city of Lewiston, it appeared that a hearing was had before a single Justice in June 1913, on petitions brought under Revised Statutes, chap. 6, secs. 70-74, by these respondents and other claimants against these petitioners and others then holding the respective offices, and on June 7, 1913, the sitting Justice rendered a decision in favor of all the then petitioners, now respondents. Appeals were taken from that decision by two of the parties, but none by these relators. Those appeals were decided in favor of the two appellants and they were declared entitled to the offices which they respectively claimed.

Thereupon, these four relators brought these proceedings in quo warranto against these respondents who, by the unreversed decision of the single Justice in the former proceeding, had been held entitled to their respective offices.

*Held:*

1.  That prior to 1880, the only legal process in this State by which the right of one unlawfully holding a public office could be inquired into was by quo warranto. If successful this was followed by mandamus. By the former process the usurper was ejected; and by the latter, the legal incumbent was substituted.

2.  That by chap. 198 of the Public Laws of 1880, which with its subsequent amendments has become R. S., chap. 6, secs. 70 to 74, the Legislature created an additional remedy not known to the common law and one more effective, not only because of its promptness but because of its scope. This act accomplished by one and the same process the objects contemplated by both quo warranto and mandamus.

3.  That these remedies are concurrent, and parties contesting title to the public offices named in the statute can proceed in the one method or the other.

4.  That judgment rendered in one form of procedure is conclusive upon all the parties thereto and is a bar to any subsequent proceedings in the other form.

5.  That the relators in this proceeding of quo warranto, having been respondents in the former statutory proceedings involving the same questions, are bound by the adverse judgment rendered in that proceeding, no appeal having been taken by them and the judgment still remaining unreversed, because it is a fundamental rule of law that, conceding jurisdiction, regularity in proceedings and the absence of fraud, a judgment between the same parties is a final bar to any other suit for the same cause of action.

6.  That a judgment in the absence of fraud cannot be overthrown in a collateral proceeding by parol testimony.

On report.  All petitions dismissed without costs.

The relators in the above four cases have each brought quo warranto to test the title to the offices of assessor, city solicitor, city physician and auditor in the city of Lewiston, and were tried together.  In June, 1913, these respondents, and other claimants, brought petitions under Revised Statutes, chapter 6, sections 70-74 against these petitioners, and others, then holding the above named offices, and upon a hearing before the sitting Justice, on June 7, 1913, said Justice rendered a decision in favor of the respondents. Appeals from said decision were taken by two of the parties, but none by these relators.  Answers and replications were filed in these cases, and at the conclusion of the hearing, the case was reported to the Law Court upon the following stipulation:

"By agreement of the parties, these four cases, which were heard together, are reported to the Law Court for its determination upon the law, the facts agreed upon, and so much of the evidence as is legally admissible.  A copy of the findings made upon the original petitions by JUDGE SAVAGE may be referred to as a part of the case, and used in argument by either party, but need not be printed."

. The case is stated in the opinion.

*Frank A. Morey,* for plaintiffs.

*W. B. Skelton,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HANSON, PHIL-BROOK, JJ.

CORNISH, J.    A full statement of the facts leading up to this case may be found in *Tremblay* v. *Murphy,* 111 Maine, 38, but an outline sufficient for our purpose, is as follows:

On the first Monday of March, 1913, a municipal election was held in the city of Lewiston, at which votes were cast for mayor, nine aldermen and twenty-seven councilmen, each of the nine wards electing one alderman and three councilmen.    A contest arose over the election in ward two.    Certificates of election were issued by the old board of mayor and aldermen, acting as a canvassing board, to Charles G. English as alderman and J. E. Ballard, M. Sullivan and Ferdinand Ebert as councilmen.    The opposing candidates, George F. Libby for alderman, and Charles G. Kernan, Henry A. Coombs, and C. F. Maines, for councilmen, claimed to be elected, and proceeded as in equity under R. S., chap. 6, secs. 70 to 74, against the parties holding the certificates, by filing their petition returnable before a single Justice of this court.    Due service was made upon the respondents named, and a hearing was had before the single Justice, who rendered judgment in favor of three of the then petitioners, viz.: Messrs. Libby, the alderman, and Kernan and Coombs, the councilmen, and in favor of one of the then respondents, Mr. Ballard, the decision being filed March 14, 1913.    An appeal was taken on March 24, 1913, from this decision by the two councilmen unseated, Messrs. Sullivan and Ebert, to the Justices of this court, was argued, and a decision was handed down on May 17, 1913, sustaining the decision below as to Libby, Kernan and Coombs, but declaring that neither Ballard nor his opponent Maines was elected councilman, their vote being a tie.    *Libby* v. *English,* 110 Maine, 449.

The City Council organized on March 17, 1913, three days after the hearing before the single Justice and before the appeal was filed.

Sullivan and Ebert, the two councilmen, who at that time held certificates of election, were sworn into office and took their seats in the board, against the protest of Kernan and Coombs who claimed to be entitled to their seats by reason of the decision of the single Justice.  On April 4, 1913, a joint convention was held, Sullivan and Ebert taking part and making a total of fifteen members, the other twelve members declining to take part.  At that joint convention subordinate city officers were elected, viz.:  Welch, the relator, as assessor, one Bernier also an assessor; O'Connell, the relator, city physician; Belleau, relator, city auditor; LeMaire, city clerk; Stetson, city treasurer; Murphy, collector of taxes.  The officers thus elected entered upon the discharge of their duties.  On May 19, 1913, two days after the decision on appeal declaring Kernan and Coombs entitled to the seats then held by the sitting members, Sullivan and Ebert, another joint convention was held, and sixteen members were present, including Kernan and Coombs.  Another set of subordinate officers was then elected, viz.:  John Lacroix, one of the respondents in the case at bar, and W. S. Keene, assessors; Pelletier, another respondent, city physician; Kelley, respondent, city solicitor; Kearns, respondent, auditor; and other officers, not involved here.  Thereupon, the officers elected this second joint convention proceeded as in equity under chap. 6, sec. 70 of the Revised Statutes and filed petitions, returnable before a single Justice, against the parties elected to the respective offices at the first joint convention, viz.:  Pelletier against O'Connell, to obtain title to the office of city physician; Kelley against Belleau for the office of city solicitor; Kearns against Asselin for the office of auditor; Murphy and Lacroix against Bernier and Welch for the office of assessors, and all the other officers for the respective offices claimed by them.

These petitions were duly served upon the various respondents and a hearing was had before a single Justice who rendered his decision on June 7, 1913, sustaining all the petitions and holding that the joint convention of April 4, 1913, was void, that none of the officers then elected had any title to his office, and that the several parties elected at the joint convention of May 17, 1913, were entitled to the offices.

From this decision appeals were entered on the part of Murphy, then holding the office of collector and Bernier then holding the office of assessor, but none was entered by or on behalf of Welch, Belleau, O'Connell, nor Asselin, the petitioners in the pending cause, nor on the part of any of the other defeated parties. The statement in *Tremblay* v. *Murphy,* supra, that Welch appealed and was entitled to his office was inadvertently made. A decision on this appeal was handed down on August 6, 1913, 111 Maine, 88 Atl. 55, holding in effect that although Sullivan and Ebert were not de jure members of the joint convention of April 4, they were members de facto as they held at that time certificates of election from the proper return-ing board and were, therefore, entitled to act upon all matters regularly presented, including the election of subordinate officers, and their right to so act could not be attacked collaterally in a pro-ceeding to which they were not parties. It was accordingly held that Murphy was entitled to the office of collector, and Bernier to the office of assessor. Coupling Welch with Bernier in the opinion was, as we have stated, an inadvertence.

On August 30, 1913, the relators, being four of the parties declared to be not elected to their respective offices by the decision of the single Justice on June 7, viz.: Welch, Belleau, O'Connell and Asselin to the offices of assessor, solicitor, physician and auditor respectively, brought these petitions in quo warranto against their respective opponents to test the title to these offices, and the question for the court to determine is whether, under the agreed facts and the evidence in the case these petitions can be maintained.

In our opinion they cannot, and for the following reasons which are but a restatement of the familiar legal principles of res judicata.

In the first place prior to 1880 the only legal process by which the right of one unlawfully holding a public office could be inquired into was by quo warranto; if successful this was followed by man-damus. By the former process the usurper was ejected and by the latter the legal incumbent was substituted. By chap. 198 of the Public Laws of 1880, which with its subsequent amendments has become R. S., chap. 6, secs. 70-74, the Legislature created an addi-tional remedy not known to the common law, and one more effective not only because of its promptness but because of its scope. As characterized by the court in *Prince* v. *Skillin,* 71 Maine, 361, "The

act accomplishes by one and the same process the objects contemplated by both these results. It ousts the unlawful incumbent. It gives the rightful claimant the office to which he is entitled. It affords a speedy and effectual remedy instead of the tedious and dilatory proceedings of the common law." In other words this statutory remedy covers the ground contemplated by quo warranto and more. It did not displace the common law remedy. It afforded merely an additional avenue of relief.

It follows, therefore, that since 1880, parties contesting the title to the public offices named in the statute can proceed in the one method or the other. Both are open. They are concurrent. The same parties try the same issue and under the supervision of the same court whichever route is travelled. This being so, it follows that judgment rendered in one form of procedure is conclusive upon all the parties and is a bar to any subsequent proceedings in the other form. The tests are: Did the court have jurisdiction in the first proceeding? Were the parties the same? Was the issue the same? Was final judgment rendered? If all these inquiries can be answered in the affirmative the judgment so rendered stands as a bar to any subsequent litigation along the concurrent line.

In the case under consideration all these tests are satisfied.

Under the statutory proceeding which was instituted by these respondents the court had full and complete jurisdiction, both of the parties and of the subject matter. Service was duly made upon the then respondents, now relators, in accordance with the order of court. They were all present at the hearing and, with one exception, were all represented by counsel. The parties were precisely the same, only reversed in the proceedings, the petitioners then being the respondents now, and the respondents then being the relators now. The issue was the same; viz., the legal title to the respective offices. And the judgment rendered in that hearing before the single Justice was final so far as these relators are concerned because no appeal was taken by them. They are bound by that decision unreversed and unappealed from. The statute terms that decision a "judgment," chap. 6, sec. 68, and like any other judgment unappealed from, it, of course, becomes final. If appealed from then the decision of the appellate court becomes the final judgment. And

after final judgment has been rendered from either source, the party unlawfully holding the office may be ousted and the legal incumbent may be installed, chap. 6, sec. 73. It is clear, therefore, that the title to these offices was finally and conclusively adjudicated in the statutory proceeding.

This being so it follows that the same question cannot be again litigated in these quo warranto proceedings. It is a fundamental rule of law, that conceding jurisdiction, regularity in proceedings and the absence of fraud, a judgment between the same parties is a final bar to any other suit for the same cause of action, and is conclusive not only as to all matters which were tried, but also as to all which might have been tried in the first action. *Davis* v. *Davis,* 61 Maine, 395; *Blodgett* v. *Dow,* 81 Maine, 197; *Corey* v. *Independent Ice Co.,* 106 Maine, 485, and cases cited. On the same principle, decrees of a Probate Court touching matters within its jurisdiction, when not appealed from, are conclusive, upon all persons, being considered in the nature of judgments. *May* v. *Boyd,* 97 Maine, 398; Mudgett's appeal, 103 Maine, 367; *Chadwick* v. *Stilphen,* 105 Maine, 242.

The learned counsel for the petitioners seeks to avoid the effect of res judicata on two grounds: First, that the relators here were the parties respondent in the former proceedings, that they did not elect that tribunal, but were involuntary parties to the proceedings, and therefore should not be bound thereby. This, however, does not prevent the working of the rule. This is not a question of election of remedies but of res judicata. If the former proceeding was legal it was equally binding upon the parties, the then respondent as well as the then petitioner. No judgment can be rendered except in favor of one party and against another and it is as binding upon the involuntary defendant as upon the voluntary plaintiff. Thus it has been held that a party cannot bring a bill in equity to enforce an equitable right, which he might have pleaded in defence to an action at law in which judgment had been rendered against him. The former judgment, in which he was a party defendant, is a bar. *Aetna Life Ins. Co.* v. *Tremblay,* 101 Maine, 585.

In the second place the relators claim that the reason for not taking an appeal was that at the hearing before the single Justice it was

understood that all the cases would be treated alike and one decision would cover all. Technically this has no legal force because, in the absence of fraud, a judgment cannot be overturned in a collateral proceeding by parol testimony. The relators omitted or neglected or at the time concluded not to enter appeals, and it has been held that the court cannot excuse a party from the result of his own mistake or negligence, even though it was due in some measure to the suggestion of the court below. *Risher* v. *Roush,* 2 Mo., 95, 22 Am. Dec., 442.

But the more satisfactory answer to the claim of the relators is that a careful scrutiny of the evidence leads to the conviction that so far as the sitting Justice was concerned, and the parties at the time, the understanding pertained to that hearing alone, and not to any further proceedings in the nature of an appeal. The record shows that the attention of the sitting Justice was called, before the hearing began, to the fact that one of the relators was present without counsel, and the Justice replied "that doesn't make any difference, as one goes, they will all go." When the record in these cases at bar was made up before the same Justice, he stated that, as he recollected it, the expression used was "they will all be treated alike." That evidently meant, that the absence of counsel for one of the parties at that hearing could not affect the result, as counsel for the others were present, the right of all were alike, and the decision of one case would decide all. And that understanding was carried out. They were all treated alike, and the same judgment was rendered by the sitting Justice in all the cases. The matter of appeal was neither discussed nor mentioned, and evidently was not in the contemplation of the parties at that time. Moreover, it appears that several of the parties, whose rights were then litigated, neither appealed nor have they joined in these quo warranto proceedings. On the merits, therefore, there can be no substantial ground for complaint on the part of these relators who failed to preserve their rights in the only way prescribed, by taking an appeal and who are therefore bound by the decision rendered below.

*All petitions dismissed without costs.*